UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANTHONY O.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 19-5063-BAT

**ORDER REVERSING THE COMMISSIONER AND REMANDING**

Plaintiff appeals the ALJ's decision finding him not disabled. He contends the ALJ erred in assessing the medical evidence, and in discounting his testimony and a lay statement.[1] Dkt. 12 at 1. Plaintiff requests the matter be remanded for further proceedings. As discussed below, the Court finds the ALJ erred in rejecting Dr. Higgins' opinion and REVERSES the Commissioner's final decision and REMANDS the case for further administrative proceedings.

## BACKGROUND

Plaintiff is currently 49 years old, has a 12th-grade education and a GED, and has worked as a construction worker, car accessory inspector, and furniture delivery driver. Tr. 49, 252, 268-

---

[1] Plaintiff also assigns error to the ALJ's assessment of his residual functional capacity ("RFC") and the step-five findings, but in doing so only reiterates arguments made elsewhere. Dkt. 12 at 15-17. Thus, these issues need not be addressed separately.

ORDER REVERSING 1

71. In January 2016, he applied for benefits, alleging disability as of January 1, 2015.[2] Tr. 221-33. His applications were denied initially and on reconsideration. Tr. 141-54, 157-68. The ALJ conducted a hearing on November 16, 2017 (Tr. 40-81), and subsequently found Plaintiff not disabled. Tr. 17-31. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:** Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date.

**Step two:** Plaintiff's history of pancreatitis with associated gastritis and alcohol-related ketoacitis, bilateral lower extremity polyneuropathy and peripheral nerve disease related to alcoholism, substance addiction disorder, and generalized anxiety disorder are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[4]

**RFC:** Plaintiff can perform sedentary work with additional impairments: he can stand/walk for no more than about two hours in an eight-hour workday, and can sit for at least six hours in an eight-hour workday. He could occasionally lift/carry 10 pounds. He could not keep up with fast-paced or rapid production demands. He could not work at unprotected heights. He could not work in commercial driving or otherwise operate potentially dangerous moving equipement. He could infrequently use foot controls. He could only occasionally be required to walk on uneven or broken ground. He could not balance frequently. He should [not] work around open containers of alcohol.

**Step four:** Plaintiff could not perform his past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled.

Tr. 17-31.

---

[2] At the administrative hearing, Plaintiff amended his alleged onset date to May 1, 2015. Tr. 45.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER REVERSING 2

## DISCUSSION

**A.     Medical Opinions**

Plaintiff contends the ALJ misevaluated the opinions of the State agency consultants and consultative examiner Katrina Higgins, Psy.D.  Tr. 92-93, 104, 554-58.

**1.     State agency opinions**

The State agency psychological consultants found Plaintiff would have occasional problems with concentration, persistence, and pace, but could complete simple, repetitive work. Tr. 92-93, 104-05.  The ALJ noted the State agency opinions contained this limitation, but discounted the limitation because of the "repeatedly unremarkable mental status exams at treatment visits, for example[,]" and also noted the jobs identified at step five are unskilled.  Tr. 29.  Plaintiff argues the ALJ erred in discounting the State agency consultants' restriction to simple, repetitive work.

The Court agrees the ALJ's reference to the step-five jobs seems to erroneously conflate unskilled jobs and a restriction to simple, repetitive work, and the Court rejects the Commissioner's suggestion the ALJ's RFC assessment is in fact compatible with the State agency opinions.  *See* Dkt. 13 at 11.  The step-five jobs require reasoning abilities that exceed the capabilities of someone who is limited to simple, repetitive tasks.  *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (holding that a capacity to perform simple, repetitive tasks conflicts with the ability to perform jobs requiring Level 3 reasoning).

However, the Court finds the ALJ's reference to "repeatedly unremarkable mental status exams at treatment visits" is a valid rationale to discount the State agency consultants' limitation. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record.").

ORDER REVERSING 3

Substantial evidence supports the ALJ's determination as the record contains many mental status examinations with normal or largely normal findings. *See, e.g.*, Tr. 366, 396, 541, 556-57, 587, 591, 597, 832, 860, 878.

Plaintiff also contends the ALJ erred in rejecting the State agency consultants' opinion he "should not work closely with the general public." Tr. 93, 105. The ALJ found the record showed Plaintiff's limitations in social functioning were "no[ne] to mild[,]" citing plaintiff's own statements regarding his social abilities, and plaintiff's providers' observations of him as pleasant, agreeable, and/or cooperative. Tr. 21. Plaintiff argues none of the evidence cited by the ALJ contradicts the State agency opinions providing that he should not work with the public (Dkt. 12 at 7). However, the ALJ did cite evidence showing Plaintiff stated that he did not have significant social deficits and was also observed not having these deficits. Tr. 21. The ALJ is empowered to assess the evidence and the Court cannot say that the ALJ unreasonably discounted the State agency opinion in light of this conflicting evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record). The Court also notes Dr. Higgins opined Plaintiff "is capable of getting along with supervisors and getting along appropriately with coworkers and the public." Tr. 558.

Plaintiff further argues the ALJ erred in failing to provide a legitimate reason to reject the State agency consultants' opinion Plaintiff was limited to occasional stooping, kneeling, crouching, and crawling. *See* Tr. 103, 117. The ALJ noted these opinions, but stated the record supported balancing limitations, but did not support limitations in the postural activities. Tr. 28-29. Even assuming the ALJ erred, any error regarding postural activities is harmless, because the jobs relied upon at step five do not require stooping, kneeling, crouching, or crawling. *See*

Dictionary of Occupational Titles ("DOT") 249.587-018, 1991 WL 672349 (document preparer definition); DOT 237.367-046, 1991 WL 672194 (telephone quotation clerk definition); DOT 205.367-014, 1991 WL 671715 (charge-account clerk definition).

Lastly, Plaintiff contends the ALJ erred in partially crediting the State agency opinions because they were written without access to the entire record before the ALJ, some of which postdates the State agency opinions. Dkt. 12 at 6. However, the ALJ considered the State agency opinions in the context of the entire record, including the evidence that postdates the State agency review, and Plaintiff has not shown that the opinions were inconsistent with all of the evidence in the record. Tr. 29 (the ALJ's discussion of the State agency opinions in the context of "the record as a whole"). Thus, Plaintiff has not shown that the ALJ erred in only partially crediting the State agency opinions. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record'" (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original)).

### 2. Dr. Higgins

Dr. Higgins examined Plaintiff in March 2016 and wrote a narrative report describing plaintiff's symptoms and limitations. Tr. 554-58. Dr. Higgins opined, *inter alia*, she "believe[d Plaintiff] may have difficulty with detailed or complex tasks due to a tendency toward concrete thinking and mildly impaired concentration." Tr. 558. The ALJ rejected this opinion finding it to be equivocal and inconsistent with Dr. Higgins' own finding that Plaintiff's concentration was only mildly impaired. Tr. 29.

Whether an ALJ may reject a medical opinion as "equivocal" is highly fact dependent. For instance, in weighing the evidence, an ALJ might properly discount a more "equivocal"

ORDER REVERSING 5

opinion in favor of a less equivocal opinion. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008) (deferring to the ALJ weighing of two medical opinions, one of which was equivocal, and explaining that "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"). Or, the ALJ might discount as "equivocal" a medical opinion where the doctor herself indicated uncertainty about the opinion by placing it under the recommendations sections. *See Valentine v. Commissioner of Soc. Sec. Admin.*, 574 F.3d 685 691 (9th Cir. 2009) (Notation about mental limitations appeared in a section of the doctor's report entitled "Recommendations.").

Here, the opinion the ALJ rejected appeared under a section entitled "FUNCTIONAL ASSESSMENT/MEDICAL SOURCE STATEMENT." Tr. 557. Dr. Higgins' opinion is thus not merely a recommendation, as in *Valentine*, but an opinion about a functional limitation. The ALJ accordibly erred in rejecting the opinion on the grounds that it was "equivocal."

The ALJ also noted Dr. Higgins opined Plaintiff's concentration was "mildly impaired." The ALJ did not explicate why this contradicts Dr. Higgins' opinion that plaintiff may have difficulty with detailed or complex tasks due to a tendency toward concrete thinking and mildly impaired concentration. Tr. 558. The ALJ thus erred in failing to provide a valid explanation as to why the ALJ's assessment rather than Dr. Higgins assessment is accurate. *See Embrey v. Bowen,* 849 F.2d 418, 421-22 (9th Cir. 1988) (ALJ must "set forth his own interpretations and explain why they rather than the doctors' are correct.").

The Court also notes Dr. Higgins' opinion references findings she made under the section entitled "INTELLECUTAL FUNCTIONING," in which she found "Attention and Concentration were mildly impaired," and his abstract thinking was "Concrete." Tr. 556-57. The doctor opinined based upon these two intellectual functioning limitations Plaintiff may have difficulty

ORDER REVERSING 6

with detailed or complex tasks. The ALJ mentioned only the concentration finding and provided no discussion about the concrete thinking limitation or the combined impact of concrete thinking and concentration limitation on Plaintiff's ability to perform work. The ALJ thus erred in rejecting Dr. Higgins's opinion that Plaintiff may have problems with detailed and complex tasks.

**B.    Plaintiff's Testimony**

The ALJ discounted Plaintiff's testimony because (1) the evidence showed he could complete his activities of daily living independently; (2) his testimony suggested he could perform a sedentary job that did not require computer skills and would allow him to move around occasionally; (3) the evidence showed medications were effective in resolving some symptoms, and that other alleged symptoms were inconsistently reported and/or received minimal treatment; and (4) Plaintiff's continued use of alcohol against medical advice, as well as his improvement during brief periods of sobriety. Tr. 23-28. Plaintiff contends these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

**1.    Activities & hearing testimony**

Plaintiff asserts the ALJ's reasoning contains unreasonable interpretations of the evidence related to two of the reasons given for discounting his testimony.

First, Plaintiff argues the ALJ erred in finding his activities inconsistent with his allegations because the ALJ compared his October 2017 hearing testimony with his reports written in 2015 and 2016, and the passage of time explains any inconsistency in his reporting, because his conditions worsened. *See* Dkt. 12 at 8-9. The Commissioner does not directly respond to this argument, but only generally defends the ALJ's findings regarding Plaintiff's

ORDER REVERSING 7

activities. Dkt. 13 at 7.

Second, Plaintiff argues the ALJ erred in relying on his answer to counsel's question at the hearing asking him to identify his "greatest obstacle to being able to do a desk job[.]" Tr. 62. Plaintiff first cited his lack of computer skills, and then explained he could perform a hypothetical job assembling widgets as long as he was able to get up and move around "every now and then[.]" *Id.* Plaintiff argues because he is not a vocational expert and has no actual experience assembling widgets, the ALJ erroneously relied on his speculative hearing testimony as evidence of his capabilities. Dkt. 12 at 9. Again, the Commissioner does not respond to Plaintiff's argument, but only generally defends the ALJ's findings regarding Plaintiff's hearing testimony. Dkt. 13 at 3.

Even assuming the ALJ erred in relying on Plaintiff's activities and/or his hearing testimony, however, these errors are harmless in light of other valid reasons described in the following section. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d at 1155, 1162-63 (9th Cir. 2008).

### 2. Improvement, lack of treatment, and alcohol use

The ALJ cited portions of the medical record indicating some of Plaintiff's symptoms resolved with medication while others went untreated, and that Plaintiff continued to use alcohol against medical advice. Tr. 24-28. Specifically, the ALJ noted Plaintiff's leg pain, peripheral neuropathy, and mental symptoms improved with medication, and Plaintiff received minimal treatment for his mental health problems and back pain. *Id.* The ALJ also noted Plaintiff inconsistently complained of left hand symptoms, only reporting them occasionally. Tr. 27. Lastly, the ALJ detailed how many of Plaintiff's treatment records note he continued to use alcohol against medical advice, and his providers linked some of his symptoms to his alcohol

ORDER REVERSING 8

use. Tr. 24-27. The ALJ found Plaintiff's continued use of alcohol (and improvement when sober) undermined his allegations of disabling physical impairments. Tr. 27.

Plaintiff does not directly challenge most of this analysis and thus fails to meet his burden of showing the ALJ harmfully erred. Plaintiff does argue the ALJ should not have relied on his lack of mental health treatment (Dkt. 12 at 11), but he has not shown his mental impairments caused him to be unable to seek treatment or provided any other plausible explanation as to why he did not receive treatment. Thus, Plaintiff has not shown that the ALJ erred in considering the inconsistency between Plaintiff's allegation of disabling mental limitations and his minimal treatment for his mental symptoms. *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012). The ALJ's reasoning in this section constitutes clear and convincing reasons to discount Plaintiff's allegations, and it therefore renders harmless any errors in the ALJ's other reasons. Accordingly, the ALJ's assessment of Plaintiff's testimony is affirmed.

**C.     Lay statement**

Agency personnel made the following notes after a phone conversation with Plaintiff about his benefits application:

> Claimant was very concerned that he did not know how this process works and what he was doing. I did my best to calm him. He kept saying "I don't know what to do." He seemed nervous and talked a lot just r[a]ndom things. I had to keep bring[ing] him back to the interview. I asked about mental health issues he said he had [none]. Just he feels depressed because he can't work, but is not under a doctor[']s care for the depression.

Tr. 248. The ALJ did not discuss this note, and Plaintiff argues that even if the note does not by itself prove disability, it supports other evidence in the record. Dkt. 12 at 14-15.

The Commissioner argues any error in the ALJ's failure to discuss this note is harmless, because the symptoms described by the agency employee are accounted for in the ALJ's RFC assessment, which restricts him from performing fast-paced work with rapid production

ORDER REVERSING 9

demands. Dkt. 13 at 13. In his Reply brief, Plaintiff disputes the Commissioner's interpretation, stating the lay opinion "obviously" conflicts with the ALJ's decision, but does not explain how. Dkt. 14 at 9. The Court agrees with the Commissioner that Plaintiff has not shown how this lay statement is inconsistent with the ALJ's decision, such that the ALJ could be said to have rejected it and was therefore required to explain why. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ "not required to discuss evidence that is neither significant nor probative"); *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (holding that an ALJ "may not reject 'significant probative evidence' without explanation" (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984))). Plaintiff has therefore failed to show harmful legal error in the ALJ's failure to discuss this note.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. §405(g). On remand, the ALJ shall reassess the opinions of Dr. Higgins, develop the record and reassess Plaintiff's RFC as appropriate and proceed to the remaining steps of the disability detetrmination process.

DATED this 16th day of October, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER REVERSING 10